IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **MARK McINTOSH,** ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Civil No. **04-961-MJR** |
| ) | |
| **JESSE MONTGOMERY,** ) | |
| **Deputy Director of the Parole Division of** ) | |
| **the Illinois Department of Corrections,** ) | |
| ) | |
| Respondent. ) | |

## REPORT and RECOMMENDATION

**PROUD, Magistrate Judge:**

This Report and Recommendation is respectfully submitted to United States District Judge Michael J. Reagan pursuant to 28 U.S.C. §§636(b)(1)(B) and (C).

Petitioner Mark McIntosh was convicted of home invasion and criminal sexual assault by a Franklin County jury. Now before the Court is his petition for writ of habeas corpus pursuant to 28 U.S.C. §2254.

## Procedural History

On April 12, 1996, McIntosh was convicted of one count each of home invasion and criminal sexual assault. He was sentenced to 10 years imprisonment on each count, to be served concurrently.

The Appellate Court affirmed on June 1, 1999, and the Supreme Court denied leave to appeal on October 6, 1999. **(Exhibits D and F, attached to Doc. 15)**.

McIntosh filed a post conviction petition in state court, which was dismissed. Petitioner's appeal was rejected by the Appellate Court on November 3, 2003. The Supreme

Court denied leave to appeal on May 26, 2004. **(Exhibits K through M)**. In addition, McIntosh filed a post-trial motion for forensic testing, seeking DNA testing. That motion was denied. The Appellate Court affirmed on July 2, 2003, and leave to appeal was denied on December 3, 2003. **(Exhibits N through S).**

The facts of the case are described in the Appellate Court's decision affirming his conviction on direct appeal, attached to **Doc. 15 as Exhibit D**. On October 12, 1995, L. G., the victim, and her friend, Roberta, encountered petitioner in a tavern in Benton, Illinois. The victim and McIntosh had dated in the past and had lived together in the early to mid-1980's. They spoke in the tavern. The two women left about 9:30 p.m. Roberta went to L. G.'s trailer home with her and stayed there for a short time. After her friend left, L. G. took her dog outside and "when she was reentering her trailer, defendant grabbed her from behind, put a knife to her face, and told her that he was tired of how L. G. refused to talk to him when he saw her....Defendant came into the trailer behind L. G., but L. G. did not invite him inside. L. G. described defendant as angry, and she testified that he frightened her. Inside the residence, defendant held onto L. G.'s clothing and continued to hold the knife up to her face. L. G. told defendant to let her go. The next thing L. G. remembered was lying face down on her bed in her bedroom. She was naked and defendant was on top of her tying her hands behind her with something that felt like a sock. L. G. testified that her feet were also tied. Although she could not see defendant, she could tell that he was naked and had an erection." Defendant attempted unsuccessfully to penetrate her vagina with his penis. In so doing, defendant's genitals came into contact with the victim's genitals. Defendant left the trailer while L. G. was in the bathroom. L. G. called Roberta, who then called the police. Defendant testified that he initially told the police that he

had not been in L. G.'s trailer, but that he was lying to protect his marriage. He testified that he and L. G. had a consensual sexual encounter on the night in question. **People v. McIntosh, 712 N.E.2d 893, 896-897 (Ill. App. 5th Dist. 1999)**.

### Grounds for Habeas Relief

Petitioner asserts the following grounds:

1. He was convicted of a "crime that did not even happen" as a result of the use of planted evidence and perjured testimony, the withholding of evidence, and the ineffective assistance of "all" counsel.

2. The state refuses to perform DNA testing on oral and rectal swabs. Such testing would prove that the "blood and semen tested belonged to the investigating officer."

3. The state refuses to turn over photographs taken of the victim at the hospital.

4. The trial court erred in ruling that DNA evidence was inadmissible under the Rape Shield Law.

### Exhaustion and Procedural Default

Petitioner must clear two procedural hurdles before the Court may reach the merits of his *habeas corpus* petition: exhaustion of remedies and procedural default. **Rodriguez v. Peters, 63 F.3d 546, 555 (7th Cir. 1995)**. "Before a federal court may grant *habeas* relief to a state prisoner, the prisoner must exhaust his remedies in state court." **O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999)**. "[S]tate prisoners must give the state court one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." **Id.; see also, 28 U.S.C. § 2254(c).** In **O'Sullivan v. Boerckel**, the Supreme Court of the United States specifically addressed exhaustion under Illinois' two-tiered appellate process, holding that issues must be raised not only to an intermediate appellate court, but also to the Illinois Supreme Court, which offers discretionary review (except under a limited number of

special circumstances, which are not applicable to this case).  ***O'Sullivan*, 526 U.S. at 843-846.**

"A *habeas* petitioner may not resort to federal court without first giving the state courts a fair opportunity to address his claims and to correct any error of constitutional magnitude. [citations omitted]   To satisfy that requirement, he must present both the operative facts and the legal principles that control each claim to the state judiciary; otherwise, he will forfeit federal review of the claim."  ***Wilson v. Briley*, 243 F.3d 325, 327 (7th Cir. 2001).**   Very simply, a claim that is raised for the first time in a federal habeas petition will not be considered.   ***Rodriguez v. Peters*, 63 F.3d 546 (7th Cir. 1995).**

Petitioner can circumvent this bar to review if he is able to demonstrate cause for his procedural error **and** establish prejudice resulting from that error.  ***Howard v. O'Sullivan*, 185 F.3d 721, 726 (7th Cir. 1999)**; and ***Coleman v. Thompson*, 501 U.S. 722, 750 (1991)**.  "Cause for a default is ordinarily established by showing that some type of external impediment prevented the petitioner from presenting his federal claim to the state courts."  ***Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004)**.  In order to demonstrate prejudice, petitioner must show that the violation of his federal rights caused him actual and substantial prejudice.  *Id.*

Petitioner has exhausted all available avenues of relief through the Illinois system, in that he is time barred from further pursuing the alleged constitutional errors in a state post-conviction proceeding.  *See* **725 ILCS 5/122-1(c); see also *O'Sullivan*, 526 U.S. at 844 (holding that repetitive petitions are not required).**  Thus, petitioner has cleared the first procedural hurdle, exhaustion.

As is reflected in **Doc. 15, Ex. A**, McIntosh raised the following points on his direct

4

appeal:

    1.    He was not proved guilty of sexual assault beyond a reasonable doubt because the evidence of penetration was ambiguous.

    2.    His trial counsel was ineffective for not moving to dismiss based on the speedy trial act, and for failing to offer instructions on a lesser included offense of criminal sexual abuse.

    3.    His conviction for sexual assault must be vacated as a lesser included offense of home invasion.

    4.    The trial court's order that he must serve 85% of his sentence is invalid. (McIntosh prevailed on that point.)

His pro se petition for leave to appeal, **Doc. 12, Ex. F**, raised the first two grounds, reasonable doubt and counsel's failure to file a speedy trial act motion.

McIntosh filed a postconviction petition which was dismissed. On appeal, he argued that appellate counsel had been ineffective for failing to raise the ineffectiveness of trial counsel in three respects:

    1.    Appellate counsel was ineffective for failing to raise the issue that it was prejudicial error for the trial court to have precluded testimony that the DNA test results excluded McIntosh.

    2.    Appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness in not asking the court to instruct the jury to disregard testimony that a court case had been filed regarding the care of his children.

    3.    Appellate counsel was ineffective for failing to allege the ineffective assistance of trial counsel because of trial counsel's improper cross-examination regarding a pair of blue jeans.

**Exhibit H.**

McIntosh filed a pro se PLA, which raised a plethora of points, most of which had never been raised before. **Ex. L**. He did raise one point that is pertinent here, that is, that "all" counsel were ineffective for not presenting claims that the state planted evidence and "played

tricks and lies." **Ex. L**.    The PLA was denied.  **Ex. M**.

Lastly, McIntosh appealed from the trial court's denial of his post-trial motion for forensic DNA testing under 725 ILCs 5/116-3.  On that appeal, he argued that he was entitled to have the oral and rectal swabs tested under the terms of the state statue and under Illinois state cases.  **Ex. N**.  The appeal was denied in a Rule 23 Order, **Ex. Q**.  McIntosh filed a PLA which did not raise any federal constitutional grounds.  The PLA was denied.  **Ex. S**.

## Analysis

This habeas petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act, known as the AEDPA.  "The Antiterrorism and Effective Death Penalty Act of 1996 modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." **Bell v. Cone, 535 U.S. 685, 693, 122 S.Ct. 1843, 1849 (2002)**.

Habeas is not another round of appellate review.  Federal courts do not review state court determinations of state law questions on habeas review.  **Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S.Ct. 475, 480 (1991);  Bloyer v. Peters, 5 F.3d 1093, 1098 (7th Cir. 1993).  28 U.S. C. §2254(d)** restricts habeas relief to cases wherein the state court determination "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or " a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

Petitioner's grounds for habeas relief are stated as if this were another round of appellate review.  It is not.  This court does not review claims of trial court error arising under state law.

6

Read broadly, petitioner's first three grounds fall into two categories: prosecutorial misconduct and ineffective assistance of counsel.

It is evident that McIntosh did not present any issue regarding prosecutorial misconduct for a full round of consideration on direct appeal or on the appeal from the dismissal of his postconviction petition. He did refer to "planted evidence" and the withholding of evidence in his petition for leave to appeal on the post-conviction petition. **See, Ex. L**. However, those points were not presented for a full round of review by the state courts. Merely raising a point in a petition for leave to appeal does not suffice. ***Wilson v. Briley*, 243 F.3d 325, 328 (7th Cir. 2001)**. His points about the use of perjured testimony, the use of planted evidence, and the refusal to turn over photographs were not presented to the state court, and are therefore waived. Those issues cannot be considered by this court unless McIntosh can show cause for his default and prejudice. ***Howard v. O'Sullivan*, 185 F.3d 721, 726 (7th Cir. 1999); *Coleman v. Thompson*, 501 U.S. 722, 750 111 S.Ct. 2546, 2565 (1991).**

Cause in this context means "some external objective factor, such as interference by officials or unavailability of the factual or legal basis for a claim, which impeded compliance with the state's procedural rule." ***Barksdale v. Lane*, 957 F.2d 379, 385 (7th Cir. 1992); see also, *Murray v. Carrier*, 477 U. S. 478, 488 (1986).** The "cause and prejudice" test is conjunctive: failure of the petitioner to satisfy one prong of the test relieves the Court of the necessity of addressing the other. ***Buelow v. Dickey*, 847 F.2d 420, 425 (7th Cir. 1988).**

Petitioner has not made any attempt to demonstrate cause, except to suggest that all of his counsel were ineffective. However, he did not exhaust a claim of ineffectiveness with regard to failing to raise the use of perjured testimony, the use of planted evidence, and the refusal to turn

over photographs. ***Edwards v. Carpenter*, 529 U.S. 446, 451-425, 120 S.Ct. 1587, 1591 (2000)**. Those alleged grounds for habeas cannot be considered.

McIntosh did raise ineffective assistance of counsel in certain respects both on direct appeal and in the appeal from the dismissal of his postconviction petition. In his habeas petition, he does not specify which counsel was ineffective. He merely states that "all" counsel were ineffective.

Pursuant to **28 U.S.C. §2254(i)**, the ineffectiveness of counsel in state collateral post-conviction proceedings "shall not be a ground for relief in a proceeding arising under section 2254." Therefore, only ineffective assistance claims as to trial and appellate counsel can be considered here.

A claim of ineffectiveness of counsel must itself be presented to a state court for consideration before it can be raised in a *habeas* petition under §2254. Under Illinois law, claims of ineffective assistance of counsel based on facts appearing in the record can be raised on direct appeal, and claims of ineffective assistance of appellate counsel can be raised in a post-conviction petition. **See, *Lemons v. O'Sullivan* 54 F.3d 357, 360 - 361 (7thCir. 1995), and Illinois cases cited in footnote 2.**

Rule 2(c) of the Rules Governing Section 2254 Cases requires that the petition "state the facts supporting each ground." Petitioner has not stated any facts which support his claim of ineffective assistance. Arguably, the claim is waived on that basis. However, the court will consider his claim of ineffective assistance insofar as it was presented to the state courts.

On direct appeal, the Appellate Court considered and rejected petitioner's claim that trial counsel was ineffective in not filing a motion raising speedy trial act and in not offering

8

instructions on a lesser included offense of criminal sexual abuse. **Ex. D**. In his petition for leave to appeal, the only ineffective assistance issue raised was the failure to move for dismissal on speedy trial grounds. **See, Ex. F**.

On appeal from the dismissal of the postconviction proceeding, the Appellate Court considered and rejected claims that appellate counsel was ineffective for failing to raise the issue that it was prejudicial error for the trial court to have precluded testimony that the DNA test results excluded McIntosh, in failing to raise trial counsel's ineffectiveness in not asking the court to instruct the jury to disregard testimony that a court case had been filed regarding the care of his children, and in failing to allege the ineffective assistance of trial counsel because of trial counsel's improper cross-examination regarding a pair of blue jeans. **Ex. K**. The petition for leave to appeal raised those points as well. **Ex. L**.

Claims of ineffectiveness of counsel are governed by ***Strickland v. Washington*, 104 S.Ct. 2052 (1984)**. The issue for this court on habeas is whether the state court's decision was "contrary to" or constituted an "an unreasonable application of" Supreme Court precedent. **28 U.S.C. § 2254(d)(1)**. "Avoiding these pitfalls does not require citation of [Supreme Court] cases - indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." ***Early v. Packer*, 537 U.S. 3, 9, 123 S.Ct. 362 (2002) (emphasis in original).**

The Seventh Circuit has noted that the scope of federal review of state court decisions on habeas is "strictly limited" by **28 U.S.C. § 2254(d)(1)**. ***Jackson v. Frank*, 348 F.3d 658, 661 (7th Cir. 2003).** The unreasonable application standard is "a difficult standard to meet." ***Id.*, at 662.** Even an incorrect or erroneous application of the federal precedent will not justify habeas

9

relief; rather, the state court application must be "something like lying well outside the boundaries of permissible differences of opinion." ***Id.*, at 662 (internal citation omitted).**

The Seventh Circuit has emphasized that, when considering a claim of ineffective assistance of counsel on habeas, federal courts must honor any "reasonable" state court decision; "only a clear error in applying *Strickland's* standard would support a writ of habeas corpus." ***Holman v. Gilmore*, 126 F.3d 876, 881-882 (7th Cir. 1997)**.

On direct appeal, the Appellate Court properly applied the principles enunciated in *Strickland*. The Appellate Court did not cite *Strickland* in its decision on direct appeal. It did, however, rely on ***People v. Albanese,* 104 Ill.2d 504, 473 N.E.2d 1246 (Ill. 1984)** which, in turn, relied on *Strickland*. *See, McIntosh*, **712 N.E.2d at 900**.

The Appellate Court accurately articulated the relevant legal standard, that is, whether counsel's representation fell below an objective standard of reasonableness and whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. That is the standard set forth in ***Strickland v. Washington*, 104 S.Ct. 2052, 2064-65 (1984).** The Appellate Court correctly analyzed the claims, explaining that a motion for discharge for violation of the speedy trial act would have been futile, and that the decision not to submit an instruction on the lesser included offense of criminal sexual abuse was a choice of trial strategy, which was reasonable in light of petitioner's defense of consent. *McIntosh***, 712 N.E.2d 899-901**. This was not contrary to nor an unreasonable application of *Strickland.*

On appeal from the dismissal of the postconviction petition, the Appellate Court again considered petitioner's claims of ineffective counsel. The decision is attached to **Doc. 15** as **Ex.**

**K.**  The court cited ***Strickland*** and correctly enunciated the relevant standard.  **Ex. K, pp. 4-5.** The court correctly explained that "unless the underlying issues are meritorious, the defendant has suffered no prejudice from counsel's failure to raise the claims on appeal."  **Exhibit K, p. 5.**

The state court held that appellate counsel was not ineffective for failing to raise a claim that the trial court erroneously excluded "exculpatory" results of DNA testing.  A vaginal swab taken from the victim showed seminal material.   DNA tasting showed that the victim's boyfriend was the source of the semen.  The victim told police she last had sex with the boyfriend four days before the crime.  The Appellate Court found that the trial court properly excluded the DNA evidence under the Illinois rape shield statute, 725 ILCS 5/115-7(a).  The Appellate Court recognized that a defendant's constitutional right to confront witnesses may override the application of the rape shield statute, but found that McIntosh's confrontation rights were not violated because the DNA results were not relevant.  "[T]here was no evidence that the defendant ejaculated, and therefore, the presence of [the boyfriend's] semen, or the absence of the defendant's semen, did not serve to exculpate the defendant."  **Ex. K, p. 6.**

The Appellate Court also considered whether appellate counsel was ineffective for not asserting that trial counsel was ineffective in failing to ask the  trial court to instruct the jury to disregard improper evidence.  This point concerns the cross examination of McIntosh.  He testified at trial that he had lied to the police about never having been in the victim's trailer.  He testified that he told that lie in order to save his marriage.  On cross examination, defendant stated "I have always took [sic] care of my family."  The prosecutor then pointed out that defendant and his wife had been separated at times in 1995 (the year of the crime) and asked "Your children had a court case filed on their care.  Isn't that right?"  Defense counsel objected

11

to the question, and the objection was sustained. **Ex. K, pp. 6-7.**

The Appellate Court found that the failure to ask the court to instruct the jury to disregard the question did not prejudice defendant. The question was not answered and the jury did not learn any further information about the case concerning the children. Before retiring to deliberate, the jury was given the standard instruction to disregard evidence to which objections had been sustained. It was not an unreasonable application of *Strickland* to conclude that McIntosh was not prejudiced by counsel's failure to ask for an instruction to disregard.

Lastly, McIntosh argued that appellate counsel should have asserted that trial counsel was ineffective in cross-examining witnesses about the victim's blue jeans. The clothes that the victim had been wearing were collected by the police before photos were taken of her trailer. That clothing included a pair of jeans collected from the living room that were torn. The clothes were entered into evidence as state's exhibit 21. After the clothing had been collected, photos were taken. A photo of the bedroom showed a pair of jeans on the floor. The victim testified both that the jeans in the bedroom photo *and* that the clothes collected by the police and entered into evidence as exhibit 21 were the ones she was wearing that night. **Ex. K, p. 8**.

The Appellate Court correctly applied *Strickland* and concluded that the failure to vigorously cross-examine the victim did not prejudice McIntosh because it was not probable that additional cross-examination on this point would have resulted in a different verdict. The jury was well aware that the police had collected the jeans and other clothing that the victim said she had been wearing before the scene photos were taken. A police officer testified to that fact, and also testified that none of the clothing in state's exhibit 21 was shown in the in the photographs. **Ex. K, p. 9.** Counsel argued to the jury that the victim invited defendant in and agreed to have

sex, but became angry at a remark made by defendant.  Counsel argued that the victim then tore her own clothes after McIntosh left in order to support her false accusation against him.  **Ex. K., pp. 9-10.**

In sum, the state court's application of ***Strickland*** was not unreasonable.  There is no ground for habeas relief where the state court "took the constitutional standard seriously and produce[d] an answer within the range of defensible positions." ***Taylor v. Bradley*, 448 F.3d 942, 948 (7th Cir. 2006)**.  Here, the state court focused on the prejudice prong of the test, which is the preferred manner of proceeding.  "This court has consistently followed the Supreme Court's mandate in *Strickland*, first examining whether the petitioner has established prejudice and then, if necessary, examining whether counsel's performance fell outside the parameters of what could objectively be considered 'professionally competent.'" ***Taylor*, 448 F.3d at 949.**  The state court was not unreasonable in concluding that the alleged deficiencies on the part of counsel did not prejudice McIntosh.

Petitioner's second ground is that the state refuses to perform DNA testing on oral and rectal swabs taken from the victim.  Petitioner filed a post trial motion for such testing pursuant to 725 ILCS 5/116-3, which was denied by the trial court. That decision was upheld on appeal. **See, Ex. Q**.  McIntosh did not present any federal constitutional issue in that proceeding.  Rather, the issues he raised concerned only state law.  He cited only Illinois cases interpreting the state statute.  **See, Ex. N and P**.

Habeas review in this court is not the equivalent of yet another round of review for trial error.  Federal habeas review of a state conviction is limited to review of claims that the conviction is "in violation of the Constitution or laws or treaties of the United States."  **28 U.S.C.**

**§2254(a)**.  Federal courts simply do not review state court determinations of state law questions on habeas review.  ***Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 480 (1991);  *Bloyer v. Peters*, 5 F.3d 1093, 1098 (7th Cir. 1993).**

The issue of whether the state court erred in denying the post-trial motion for DNA testing presents only questions of state law.  725 ILCS 5/116- 3 provides that, after conviction, a defendant may move the trial court in which he was convicted to order DNA testing "on evidence that was secured in relation to the trial which resulted in his or her conviction, but which was not subject to the testing which is now requested because the technology for the testing was not available at the time of trial."  The defendant must make a prima facie showing that "identity was the issue in the trial which resulted in his or her conviction."

In its Rule 23 Order affirming the denial of petitioner's motion for testing, the Appellate Court noted first that "because the technology for testing was available at the time of the trial, the defendant's motion for forensic testing fails on this basis alone."  **Ex. Q, p. 5**.  Secondly, the Appellate Court found that the trial court was correct in holding that McIntosh failed to make a prima facie showing that identity was at issue at trial, as required by the statute.  His defense at trial was that the sexual encounter had been consensual.  Again, this was a state law issue.

Petitioner does not identify any authority for the proposition that the federal constitution mandates that forensic DNA testing be performed on every sample taken from the victim in a sexual assault case.  Here, there was no issue as to the identity of the perpetrator because the victim knew the defendant.  The issue was whether the sexual encounter was forcible or consensual.  The results of DNA testing on the swabs were not relevant to that issue.  Because McIntosh failed to present any federal constitutional issue in connection with his motion for

DNA testing, he did not preserve any issue in that regard for habeas review.  Therefore, this court may not consider the issue.

Petitioner's third ground is that the state refuses to turn over photographs taken of the victim at the hospital.  As is noted above, this ground was not presented as a federal constitutional claim for a full round of review in the state court, and it cannot be considered here.

Lastly, there is petitioner's contention that the trial court erred in excluding DNA evidence that exonerated him.  Petitioner states this ground as follows, "Can the Court rule DNA evidence, 'which at the very least would prove perjury,' inadmissible due to the rape shield law?" Petitioner recognizes that did not raise this issue in state court. He explains in his habeas petition that "Though in my original petition for DNA testing I set forth the set up, no public defender would address those issues."

The failure of counsel to raise an issue can serve as "cause" in the cause and prejudice analysis.  However, the failure of counsel to raise the issue must itself be presented for a full round of state court consideration.  **Edwards v. Carpenter, 529 U.S. 446, 451-425, 120 S.Ct. 1587, 1591 (2000)**.  In his postconviction petition, McIntosh asserted that appellate counsel had been ineffective in not raising the issue that his due process rights were violated when the trial court excluded the "exculpatory" results of DNA testing.  As is noted above, the Appellate Court held that such evidence was not exculpatory; in fact, it was not relevant at all because the victim did not claim that McIntosh ejaculated.  Since the state did not claim that McIntosh was the source of the seminal material found on the vaginal swab, the fact that DNA testing indicated that the semen was from another individual did not serve to inculpate or exculpate McIntosh.  It was simply irrelevant.  The Appellate Court found that appellate counsel was not ineffective in

15

failing to raise the alleged ineffectiveness of trial counsel in failing to challenge the exclusion of the evidence on direct appeal.  This Court agrees.

Absent a specific showing of cause and prejudice, "the cause and prejudice standard will be met in those cases where review of a state prisoner's claim is necessary to correct 'a fundamental miscarriage of justice.'"  *Coleman*, **501 U.S. at 748, 750 111 S.Ct. at 2564.**  This exception requires a colorable claim of actual innocence as well as an allegation of a constitutional wrong.  **See,** *Sawyer v. Whitley*, **505 U.S. 333, 339, 112 S.Ct. 2514, 2518 (1992).**  This is not such a case.  McIntosh has not demonstrated a constitutional wrong, and he has not advanced a colorable claim of actual innocence.  **See,** *Sawyer v. Whitley*, **505 U.S. 333, 339, 112 S.Ct. 2514, 2518 (1992) (miscarriage of justice exception applies to "actual" innocence as compared to "legal" innocence)**

### Recommendation

This court recommends that Mark McIntosh' Petition for Writ of Habeas Corpus should be denied in all respects.

Objections to this Report and Recommendation must be filed on or before **November 21, 2007.**

   **DATE: November 1, 2007.**

                         s/ Clifford J. Proud
                         CLIFFORD J. PROUD
                         UNITED STATES MAGISTRATE JUDGE